UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID W. PARTIDA,

       Plaintiff,

v.                                        CASE No. 8:10CV-2788-T-35MAP

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

     Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks review of the Commissioner's decision denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] Essentially, he argues that the Administrative Law Judge ("ALJ") erred by unduly relying upon an isolated, positive Waddell's test; considering evidence from a cooperative disability investigation (CDI) investigator; and improperly evaluating his credibility. Having carefully reviewed the record, I find the Commissioner correctly followed the regulatory scheme and entered a decision supported by substantial evidence, and recommend the decision be affirmed.

    *A. Background*

     Plaintiff, who was fifty-two years old at the time of the ALJ's decision, has a high school education and previous work experience as a landscape worker, tile setter, construction worker, material handler, and an instructor on the operation of office scanners. He alleges disability beginning October 5, 2004, due to bone spurs in his neck, problems with his left leg, high blood pressure and

---

[1] The district judge referred this matter to me for a report and recommendation. *See* 28 U.S.C. § 636.

hepatitis C.[2] Plaintiff protectively applied for disability insurance benefits and supplemental security income on September 14, 2006. His date late insured for DIB was June 30, 2006. The ALJ denied benefits, finding that he retained the residual functional capacity (RFC) to perform his past work as a teacher's aide. The Plaintiff appealed, and the Appeals Council declined review. At this juncture, the Plaintiff has exhausted his administrative appeals, and the ALJ's decision is the final decision.

*B. Standard of Review*

To be entitled to DIB or SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the

---

[2] The ALJ accurately reports Plaintiff's medical history, and I adopt that portion of his decision for purposes of this Report and Recommendation.

medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert,* 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

### C. Discussion

#### 1. Waddell's test

Plaintiff claims the ALJ erred by emphasizing multiple times in his decision that he had a positive "Waddell's test," a clinical test for patients with low back pain that can be used to indicate whether the patient is exaggerating symptoms. *See Smithson v. Astrue,* 2011 WL 5368812, *8 n.6 (N.D. Fla. October 13, 2011) (Waddell's sign is a sign for nonorganic pain ... Waddell's signs are a

3

group of physical signs that may indicate a non-ogranic or psychological component to lower back pain. Waddell's signs are also used to detect malingering or exaggeration in patients complaining of lower back pain) (citing Waddell, Gordon; John McCulloch, Ed Kummel, Robert Venner (March/April 1980), "Nonorganic Physical Signs in Low-Back Pain," SPINE 5(2):117-125). Plaintiff further complains that the ALJ relied upon the allegedly positive Waddell's test to opine that he was a malingerer. In response, the Commissioner states that the ALJ relied upon substantial evidence in the record as a whole to support his impression that Plaintiff was a malingerer. I agree.

The ALJ discussed Plaintiff's medical evidence in a detailed five page summary, mentioning the positive Waddell's test twice: first when he considered consulting expert Dr. Axline's opinions, and again when he reached his conclusions regarding Plaintiff's limitations. Dr. Axline testified at the ALJ hearing that Plaintiff had a single positive Waddell's test on November 29, 2005 which was consistent with malingering.[3] It is clear that Dr. Axline thoroughly reviewed the medical evidence in reaching his conclusion. Dr. Axline testified that Plaintiff's neurological exam showed no neurological manifestation, that the surveillance report showed no limitations, that neurological upper extremity tests were all normal except for right grip which was 4 out of 5, and that there was a "symptom exaggeration of malingering because of the conflict in straight leg raises" (R. 62-63). Dr. Axline testified that the medical records included another normal neurological examination in August 2008 that indicated the Plaintiff was working as a landscaper, and a functional capacity evaluation that stated Plaintiff could climb one flight of stairs and carry ten pounds which was inconsistent with the

---

[3] The November 29, 2005, report does not specifically state that there was a positive Waddell's test (Exhibit 33F, R. 573-579). Referring to the report, however, Dr. Axeline testified that it showed the Plaintiff had a positive Waddell test indicating malingering (R. 64). Plaintiff's counsel did not object to this conclusion, and declined the opportunity to cross-examine Dr. Axeline at the hearing (R. 68).

Plaintiff's testimony at the hearing that he could stand for zero minutes and could not lift anything (R. 64). Dr. Axline further testified that Plaintiff's focus has been drug taking, and that "the reasons why those drugs are medically indicated are based on fallacious continuous things;" that Plaintiff has remained post-operatively on the temporarily increased drugs prescribed to him for an acute hernia which was surgically repaired; and that "Plaintiff's complaints of today of being intolerant of sitting because of neck pain is not medically sound" (R. 65-66).

In concluding that the Plaintiff has some limitations from his impairments but not to the preclusion of all work activities, the ALJ stated that "the claimant's alleged side effects from medications are not supported by the medical evidence of record and a consultative physical examination in November 2005 was consistent with a positive Waddell's test that indicated malingering" (R. 29). While Plaintiff's assertion that the Waddell's test should not be "overinterpreted" as it takes three of more signs to indicate that a patient "does not have a straightforward physical problem" (Doc. 24, p. 16), I find that the ALJ has provided ample support in the record for his conclusions and has not given undue weight to the Waddell's test. Other record evidence buttresses the ALJ's findings, including his finding that Plaintiff's allegations are unsupported by the record. A November 2006 consultative examination by Dr. Proctor noted Plaintiff had no trouble getting onto and off of the examination table in a normal fashion with normal speed and without any discerned or professed discomfort (R. 437), he arose from the supine position and got off the exam table in a somewhat guarded fashion, and his gait, both in his office and in the parking lot, was normal (R. 437). Dr. Proctor opined that Plaintiff's "gait and posture are not consistent with the poor muscle strength testing at the lower extremities" (R. 437). Similarly, Dr. Powell noted on November 29, 2005, that Plaintiff had "no difficulty getting in/ out of armless chair and exam table"

and had "no pain discomfort- seated" (R. 574-575). Although Plaintiff's reports of pain waxed and waned over the years, treating Dr. James noted on numerous dates that Plaintiff was able to work, and that his pain was tolerable with medications (R. 494-499). A Residual Functional Capacity assessment in February 2007 indicated Plaintiff's allegations may be credible nut little functional loss (R. 521), and another RFC assessment dated December 2005 concluded Plaintiff and indicated "Clmt stated he tires after approx 1 hr of yd work must rest (R. 558). Although Plaintiff testified at his administrative hearing on March 25, 2009, that he walked with a cane and had been for two years per a recommendation from his case worker (R. 54), Dr. James indicated no assistive device was medically necessary for ambulation as of November 9, 2005 (R. 570), a more relevant time given that Plaintiff's DLI was June 30, 2006. The ALJ also considered the CDI investigation as it "is another source that may provide information to help understand how the claimant's impairments affect his ability to work" (R. 27). The ALJ found the report "generally persuasive and consistent with the evidence of record as a whole" (R. 27). Plaintiff's contention that the ALJ erred by relying upon this investigation is discussed below in part (2). Accordingly, I find the ALJ did not err in placing undue reliance on an isolated allegedly positive Waddell's test. As discussed, substantial evidence supports the ALJ's impression that Plaintiff was a malingerer and was able to perform work.

    *2. CDI investigation*

  Plaintiff asserts the ALJ erred by relying upon a Cooperative Disability Investigation (CDI) report (R. 442-449) dated December 12, 2006, that summarized and relied upon a video surveillance that the ALJ did not personally review. Plaintiff's representative objected to the consideration of the CDI report as double hearsay at the outset of Plaintiff's administrative hearing. The ALJ noted the objection, stating that the rules of evidence are relaxed during administrative proceedings, and opined

that he would "give it such weight as I feel it is entitled to be given" (R. 36). While the courts within this circuit have yet to address this topic, other courts have held that an ALJ may properly give consideration to a CDI report. *Byerly v. Astrue,* 2010 WL 4905510, *8 (E.D. Mo. October 29, 2010) citing *Robert v. Astrue*, 2010 WL 715340, *7-8 (D. Mass. Feb. 25, 2010). The ALJ's decision shows that he considered the report, along with the other record evidence, and assigned it the weight he deemed appropriate. I find that the ALJ's treatment of the report was both appropriate and reasonable, and that substantial evidence supports the ALJ's credibility finding.

### 3. credibility

Plaintiff argues that the ALJ discounted his credibility with a "rambling discussion," and that his credibility evaluation is not supported by substantial evidence. I find that the ALJ properly considered the Plaintiff's activities of daily living in accordance with the law of this circuit. The Eleventh Circuit has established a three-part "pain standard" that applies to claimants that attempt to establish a disability through their own testimony of subjective complaints. The standard requires evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain. *See Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991). When the ALJ decides not to credit a claimant's testimony as to her pain he must articulate explicit and adequate reasons for doing so. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Id.* at 1562**.**

In satisfying the *Holt* standard, the ALJ found that the Plaintiff's statements regarding his impairments were not credible to the extent that they were inconsistent with his RFC assessment (R.

25). He discussed the Plaintiff's allegations and testimony, and contrasted them against the medical evidence and Dr. Axeline's testimony (R. 24-25). He concluded that "[a]lthough the undersigned noted that the claimant sat through the entire hearing, which is inconsistent with the sitting limitations alleged, the undersigned has afforded every benefit of doubt to the claimant's subjective complaints of pain; hence, the more restrictive residual functional capacity arrive at above" (R. 25). The circuit has recognized the ALJ's prerogative for assessing the claimant's credibility. *See Macie v. Bowen,* 829 F.2d 1009, 1011 (11th Cir. 1987) (noting ALJ may consider his personal observations at the hearing); *Norris v. Heckler,* 760 F.2d 1154, 1157 (11th Cir. 1985) (rejecting "sit and squirm" argument because ALJ did not impose his observations in lieu of a consideration of the medical evidence). I find the ALJ clearly articulated his credibility determination, and substantial evidence supports it.

### D. Conclusion

For the reasons stated, it is hereby

RECOMMENDED:

1. That the Plaintiff's complaint be dismissed and the Commissioner's decision be affirmed.

2. The Clerk be directed to enter judgment for the Commissioner.

IT IS SO REPORTED at Tampa, Florida on January 26, 2012.

                                             /s/ Mark A. Pizzo
                                             MARK A. PIZZO
                                             UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).